PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———


No. 15-3111
———


HARRY E. HAMILTON,
                            Appellant

v.

NICOLE BROMLEY, Centre County Children
and Youth Services;
DIRECTOR OWNER OPERATOR YOUTH HAVEN;
JUDGE BRADLEY P. LUNSFORD; JOHN DOES,
JANE DOES, Employees of Children and Youth Services,
Youth Haven or ABC Corps
———


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D.Pa. No. 4-14-cv-02248)
District Judge:  Honorable Matthew W. Brann
———

Argued on May 22, 2017

Before: HARDIMAN, ROTH and FISHER, *Circuit Judges*.


(Filed: July 10, 2017)

Jon G. Heintz          [ARGUED]
Jennifer L. Swize
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001
        *Counsel for Harry E. Hamilton*

James P. Johnson     [ARGUED]
1901 East College Avenue
State College, PA 16801
        *Counsel for Nicole Bromley*

Steven F. Baicker-McKee
Babst Calland
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222

Amy H. Marshall     [ARGUED]
Babst Calland
330 Innovation Boulevard, Suite 302
State College, PA 16803
        *Counsel for Director Owner Operator Youth Haven*

Michael Daley          [ARGUED]
Supreme Court of Pennsylvania
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
          *Counsel for Judge Bradley P. Lunsford*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

It is a longstanding principle that the federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821). But in *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court recognized "a far-from-novel exception to this general rule," *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (internal quotation marks omitted), which it expanded in subsequent decisions. Under the Court's *Younger* jurisprudence, federal courts are obligated to abstain from exercising their jurisdiction where it would interfere with "state criminal prosecutions," certain "civil enforcement proceedings," or "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 ("*NOPSI*") (1989).

3

In this case, Harry Hamilton seeks declaratory and injunctive relief from an alleged conspiracy to deprive him of contact with his son. But because he now has custody of his son subject to pending state-court proceedings, the District Court opined that this case could be moot and dismissed it on *Younger* abstention grounds. Although the District Court erred in dismissing this case under *Younger* before resolving whether it is moot—a federal court can abstain from exercising its jurisdiction only if it has jurisdiction to abstain from—we find that Hamilton's custody of his son has mooted his case. We will accordingly affirm the District Court's dismissal on that alternate ground.

## I

Since 2004, Harry Hamilton and his ex-wife, Sherrilyn Washington, have fought in state court for custody of their son, S.H. This case originates from that dispute, centering on a three-week period in 2014 when Hamilton had partial custody of S.H. and S.H. accused Washington of abusing him.

## A

On November 7, 2014, S.H. fled from Washington's home to Hamilton's claiming that he had been abused by her. Hamilton filed a motion in the Centre County Court of Common Pleas for a temporary order giving him full custody of S.H. And after S.H. stayed with Hamilton over the weekend, Washington filed a petition for emergency custody, alleging that S.H was with Hamilton without her consent.

That same day, Common Pleas Judge Bradley Lunsford granted Washington's petition for emergency custody and authorized the police to enforce his order. Concurrently, S.H. was referred to Centre County's Children and Youth Services ("CYS") due to S.H.'s abuse allegations.

4

CYS concluded that the alleged incident did not meet the definition of child abuse. But it spoke with Washington—who maintained that Hamilton was influencing S.H.—and S.H.—who stated that he did not feel safe with Washington. CYS continued its investigation, giving S.H. the option of moving into a group home or remaining with his mother. S.H. continued to tell CYS that he did not want to stay with her. So CYS advised placing S.H. in a group home called Youth Haven.

On November 13, Washington arranged for S.H. to be placed in Youth Haven. At the time, she objected to S.H. being able to contact Hamilton, claiming that she had sole custody of S.H. Over her objection, CYS recommended allowing S.H. to contact Hamilton and Youth Haven agreed to facilitate that contact. The night S.H. moved in, Hamilton called S.H. The next day, he delivered clothes for S.H. And during the week that followed, he regularly spoke with S.H. on the phone. On November 16, Hamilton visited S.H. During that visit, he noticed several conditions that concerned him, including that S.H. was subject to search by staff, disproportionately assigned chores, and placed in a ground level room that lacked blinds. He shared his concerns with Youth Haven, which told CYS that S.H. could not stay there due to problems that had occurred during Hamilton's visit. To facilitate S.H.'s stay in Youth Haven, Nicole Bromley, a CYS employee, informed Hamilton that he could no longer contact S.H. at Youth Haven.

**B**

On November 24, 2014, Hamilton filed a *pro se* suit in federal district court against Nicole Bromley, CYS and certain of its employees, Youth Haven and certain of its employees, and Judge Lunsford. In his complaint, he sought

5

declaratory and injunctive relief, alleging that the Defendants conspired to deprive him of his constitutional rights by "placing S.H. in a shelter tantamount to confinement" and "arbitrarily and capriciously terminating all paternal visits and contact." App. 17-18. Separately, Hamilton sought a temporary restraining order, which was denied. The District Court referred the case to a magistrate judge for pretrial management and resolution of all dispositive motions.

While Hamilton's federal case progressed, custody proceedings also continued in Pennsylvania state court. On November 25, CYS updated Judge Lunsford on its abuse investigation; on November 28, S.H. left Youth Haven; and on December 2, Judge Lunsford recused himself. Eventually, Clinton County Court of Common Pleas Judge Michael Williamson took over the state case. And in April 2015, he entered an order that vacated Judge Lunsford's prior emergency custody order, granted Hamilton physical custody of S.H., and prohibited contact between S.H. and Washington.

On May 5, 2015, the magistrate judge in Hamilton's federal case learned that Hamilton regained physical custody of S.H. and issued an order for Hamilton to show cause why the case should not be dismissed on abstention or mootness grounds. The magistrate judge subsequently issued a Report and Recommendation ("R&R") advising dismissal of Hamilton's complaint under *Younger*. In so recommending, the magistrate judge noted that it was "unable to make . . . a determination" as to whether Hamilton's case was moot. *Hamilton v. Bromley*, 2015 WL 4077591, at *5 n.2 (M.D. Pa. July 2, 2015). The District Court adopted the R&R and

6

dismissed this case on July 2, 2015. This timely appeal followed.[1]

## II

Although the constitutional elements of both our jurisdiction and the District Court's jurisdiction are at issue in this case, the statutory elements are not. The District Court had federal question jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a trial court's ruling on mootness, *Weitzner v. Sanofi Pasteur, Inc.*, 819 F.3d 61, 63-64 (3d Cir. 2016), and its determination of whether *Younger* abstention is proper. *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005). Our review of whether subject-matter jurisdiction exists is also plenary. *Weitzner*, 819 F.3d at 63.

## III

On appeal, Hamilton argues that the District Court erred in dismissing this case. He maintains that the District Court improperly abstained under *Younger* and that his case has not been mooted by the fact that he has regained full custody of S.H. In responding to Hamilton's argument, the sequence in which we address mootness and abstention is critical as "[m]ootness is a jurisdictional question" that derives from Article III of the Constitution, *North Carolina v. Rice*, 404 U.S. 244, 246 (1971), whereas *Younger* abstention is not. *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 626 (1986) ("[*Younger* abstention] does

---

[1] *Pro bono* counsel has represented Hamilton on appeal. We express our gratitude to counsel for accepting this matter *pro bono* and for the quality of counsel's representation.

7

not arise from lack of jurisdiction . . . but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced.").

Because federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), and because the "statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), "Article III jurisdiction is always an antecedent question." *Id*. Thus a court cannot abstain under *Younger* unless it concludes that it has Article III jurisdiction to abstain from. *See, e.g.*, *Juidice v. Vail*, 430 U.S. 327, 331 (1977) (noting that the Court was "first obliged to examine the standing of appellees, as a matter of the case-or-controversy requirement associated with Art. III" before addressing *Younger*); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 23 (1987) (Marshall, J., concurring) ("There is no occasion to decide if abstention would have been proper unless the District Court had jurisdiction."); *Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013) ("[A] district court can abstain only when it has . . . jurisdiction.").

In this case, the District Court dismissed Hamilton's case under *Younger* before concluding whether it is moot. And in failing to consider if it had Article III jurisdiction first, the District Court erred. *See Steel Co.*, 523 U.S. at 94-95 ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is . . . without exception." (brackets and internal quotation marks omitted)). To avoid that same error, we will analyze mootness first even

8

though the District Court dismissed this case on *Younger* abstention grounds.

## A

Though federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976), Article III of the Constitution limits the federal judiciary's authority to exercise its "judicial Power" to resolving "Cases" and "Controversies." U.S. Const. Art. III, § 2. This case-or-controversy limitation is "essential to our system of separated powers," *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009), by "ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted). And we enforce it "through the several justiciability doctrines that cluster about Article III," including "standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." *Toll Bros.,* 555 F.3d at 137 (internal quotation marks omitted).

As the parties agree, the fact that Hamilton has regained custody of S.H. implicates mootness, a doctrine that "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit," *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) (internal quotation marks omitted), and is "concerned with the court's ability to grant effective relief." *Cty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001). Under our precedent, a case is moot if "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the

outcome of a suit or prevent a court from being able to grant the requested relief." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996).

Like most rules, mootness has exceptions and "when a litigant is unable to meet the requirements of the general mootness inquiry, the litigant may invoke an exception to the mootness doctrine to gain judicial review." *Chong v. Dist. Dir., INS*, 264 F.3d 378, 384 (3d Cir. 2001). One exception is when "secondary or 'collateral' injuries survive after resolution of the primary injury"; another is when "the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time." *Id.* Other exceptions to mootness include when "the issue is deemed a wrong capable of repetition yet evading review" or the case is "a properly certified class action suit." *Id.*

Because the illegal conduct of which Hamilton complains—being separated from his son and deprived of contact with him—is no longer occurring, he must invoke an exception to mootness to gain judicial review. He has not requested damages and because equitable relief "is available only so long as there is an actual controversy among the parties," *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 40 (3d Cir. 1985), and because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding [equitable] relief . . . if unaccompanied by any continuing, present adverse effects," *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), neither a declaratory judgment nor an injunction is available here.

Relying on our decision in *Winston by Winston v. Children & Youth Servs. of Delaware Cty.*, 948 F.2d 1380 (3d Cir. 1991), Hamilton claims his past injury is capable of repetition yet evading review because there is a reasonable

10

expectation that he "will again be subject to the same unlawful limitations on his parental rights." Hamilton Br. 37. We disagree. The capable-of-repetition doctrine is a narrow exception that "applies only in exceptional situations" where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (brackets and internal quotation marks omitted). And though we agree with Hamilton that the fluid nature of custody proceedings can make situations like his too short litigate before a change in circumstances, we cannot find a "reasonable expectation" or "demonstrated probability" that the "same controversy will recur" here. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

First, circumstances have changed dramatically since this case was filed: a new judge is presiding over the divorce-and-custody proceedings; Hamilton has had physical custody of S.H. for over two years; S.H. is approximately sixteen years old; and the most recent custody order prohibits contact between S.H. and Washington unless S.H. desires to speak with her. Any one of these changes could have made a significant difference when CYS recommended S.H.'s placement at Youth Haven—particularly the shift in custody from Washington, who was alleged to have abused S.H., to Hamilton, who was not—making it unlikely that Hamilton "will once again be faced with the restrictions . . . that are the subject of this lawsuit." *Winston,* 948 F.2d at 1384.

Second, the "conduct complained of was . . . necessarily predicated on the *unique* features of [a] particular series of [events]" and "[n]othing on this record apprises us of the likelihood of a similar chain of events." *New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 33 (3d Cir.

11

1985). Before Hamilton is subject to the same restrictions on his parental rights that were imposed in 2014, there would need to be (1) some strife between child and father or father and mother (2) that CYS got involved in. And at that point, CYS would (3) need to encourage and convince S.H. to stay in a group home while mediating that dispute and (4) the shelter would have to deprive Hamilton of access to S.H. On this record, it is too speculative that any one of those actions would occur—let alone all four—and more than speculation is required to invoke the capable-of-repetition exception. *See id*. ("'Capable of repetition' is not a synonym for 'mere speculation;' it is a substantive term on which the moving party must provide a reasonable quantity of proof—perhaps even by the preponderance of the evidence.").

Finally, our decision in *Winston* does not suggest otherwise. In that case, a child was placed in CYS's protective custody after his father was arrested on a drug charge and his mother was transported to the hospital for intoxication. 948 F.2d at 1382. CYS limited the parents' visitation rights during that protective custody and the parents sued to challenge those limitations as unconstitutional. *Id*. When the father regained custody, CYS moved to dismiss the complaint for mootness. On appeal, we found that the dispute was capable of repetition yet evading review noting that:

> [W]e cannot share the dissent's optimism that there is no reasonable expectation that the family unit, composed as it is of two parents who have a history of drug use, will not experience another breakdown requiring CYS to retake temporary custody of Samuel Jr. In fact, as appellants have noted, legal custody was returned to the parents only subject to conditions which, if not complied with, could subject them to a repeat of the situation which precipitated this lawsuit.

12

*Id.* at 1384.

Unlike in *Winston,* Hamilton's custody is not subject to monitoring conditions. Unlike in *Winston*, where both parents had a history of drug abuse, only one parent has been alleged to have abused S.H. and that parent lacks custody of him. And unlike in *Winston*, Hamilton is not challenging a specific state policy that would apply to any future custody dispute. These distinctions are critical—in *Winston*, all that was required for the parents to be subject to "a repeat of the situation which precipitated th[eir] lawsuit," *id.*, was for one of them to use drugs again, whereas the same limitations on Hamilton's parental rights could not recur absent the chain of events discussed above and despite the shift in custody to a parent with no history of abusing S.H. Consequently, while there is a "theoretical possibility" that S.H. will again be placed in a group home where Hamilton cannot contact him, that possibility is not enough to invoke the capable-of-repetition exception. *Murphy*, 455 U.S. at 482. Because the case is moot and no mootness exception applies, it is not justiciable and the District Court should have dismissed it on that basis.

## **B**[2]

Since we lack Article III jurisdiction over this case, we cannot resolve whether *Younger* abstention is appropriate because a "judicial decision rendered in the absence of a case or controversy is advisory, and federal courts lack power to render advisory opinions." *United States v. Thomas*, 713 F.3d 165, 168 (3d Cir. 2013); *see also Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Jurisdiction is power to declare

---

[2] Judge Hardiman joins the opinion except as to Section III.B.

13

the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). But because the opinion below contains an uncontested error, we believe the District Court's *Younger* analysis warrants comment.

In dismissing this case on *Younger* grounds, the District Court relied on a non-precedential opinion of this Court to hold that "[u]nder *Younger*, abstention is proper if: (1) there is an ongoing state proceeding; (2) the proceeding implicates an important state interest; and (3) the state proceeding affords the plaintiff an adequate opportunity to raise federal claims." *Hamilton*, 2015 WL 4077591, at *4 (citing *Dixon v. Kuhn*, 257 F. App'x 553, 555 (3d Cir. 2007)). Notably, it did not consider the Supreme Court's decision in *Sprint*, nor did it consider our recent precedential opinions examining *Sprint*. *See, e.g.*, *Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d 176 (3d Cir. 2014); *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127 (3d Cir. 2014).

These three factors the District Court relied on in justifying abstention originate in *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). But the Supreme Court explained in *Sprint* that the "three *Middlesex* conditions . . . [a]re not dispositive," 134 S. Ct. at 593, because "*Younger* extends" only to "the three 'exceptional circumstances' identified in *NOPSI*," *id*. at 594, including: (1) "ongoing state criminal prosecutions"; (2) "certain civil enforcement proceedings"; and (3) "pending civil proceedings involving certain orders . . . uniquely in the furtherance of the state courts' ability to perform their judicial functions." *Id*. at 591 (internal quotation marks omitted). In considering only the three *Middlesex* factors, the District Court committed the same error that the Supreme Court faulted the Eighth Circuit with making in *Sprint*. And while

14

that error may be understandable—as we noted in *ACRA Turf Club*, "most courts strictly and mechanically applied the three-part test from *Middlesex*" between *NOPSI* and *Sprint*, 748 F.3d at 135—*Sprint* makes clear that the *Middlesex* factors are only relevant in assessing whether *Younger* abstention is proper after a court identifies one of the three categories of proceedings identified in *NOPSI*. By not applying the correct test for *Younger* abstention, the District Court erred. And this was an error irrespective of whether *Younger* abstention is appropriate here—an issue we cannot opine on.

## IV

For the reasons set forth above, we will affirm the District Court's dismissal of this case on the alternate ground that Hamilton's claims are moot.