NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3231
_____

JULIUS CEPHAS, on behalf of himself and the members of LOCAL 1694-1,
International Longshoremen's Association, AFL-CIO; PAUL CUTLER;
EMMETT FOSTER; SALLY CHAPMAN

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION; HAROLD J. DAGGETT,
individually and as the presiding officer of the International Longshoremens Association;
WILLIAM ASHE, JR., as trustee for Local 1694-1, International Longshoremens
Association, AFL-CIO; BRIAN WITIW, as trustee for Local 1694-1, International
Longshoremens Association, AFL-CIO

Julius Cephas,
Appellant
_____

Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. Action No. 1-16-cv-00316)
District Judge: Honorable Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 10, 2019
_____

Before: HARDIMAN, GREENAWAY, JR., and BIBAS, *Circuit Judges*.

(Opinion Filed: September 11, 2019)

_____

OPINION*
_____

GREENAWAY, JR., *Circuit Judge*.

This appeal arises from a union dispute in which Appellee International Longshoreman's Association, AFL-CIO ("ILA") imposed a trusteeship over Local 1694-1,[1] removed all of its officers, and barred Appellant Julius Cephas from running for any union office for three years. These measures resulted from a hearing in which the ILA hearing committee found that Local 1694-1's officers had maintained an unfair and discriminatory seniority system and had impeded an investigation into complaints about this system. Cephas and his fellow officers instituted this action seeking to dissolve the trusteeship, to seek reinstatement to their positions, and to rescind the suspension of Cephas's right to run for office. The trusteeship was lifted during the pendency of the proceedings below, so, on August 9, 2018, the District Court dismissed the claims regarding dissolution and reinstatement as moot.

Cephas informed the District Court that he continued to seek rescission of his suspension, which began on April 25, 2016 and would not end until April 25, 2019. The District Court exercised jurisdiction over the remaining claims on that premise and

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Local 1694-1 represents individuals working in cargo handling and warehousing functions at the Delaware State Port Corporation.

2

granted summary judgment in favor of the ILA on September 10, 2018. *Cephas v. Int'l Longshoremen's Ass'n, AFL-CIO*, 2018 WL 4326939, at \*2–3, \*5 (D. Del. 2018). Cephas timely appealed to us, but the suspension ran its course during the pendency of his appeal. So now mootness is again implicated.

The doctrine of mootness is one of the limitations to the federal judicial power contained in the Case or Controversy Clause of Article III of the Constitution. U.S. Const. art. III, § 2, cl.1. It persists throughout the life of the lawsuit, including on appeal. *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017). Along with mootness, the object of the suite of requirements stemming from the Case or Controversy Clause is to ensure that we, the federal judiciary, respect the proper role of the courts in a democratic society. *Id.* at 334–35 (referring to mootness, standing, ripeness, the political-question doctrine, and the prohibition on advisory opinions). Mootness in particular is implicated when "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief." *Id.* at 335 (internal quotation marks and citation omitted). The latter is the case here: that the ban against Cephas has run its course means that we are unable to grant him the relief he seeks. In other words, we cannot bring an end to something that has already ended.

Cephas asks that we nonetheless take up his case through an exception. The exception to mootness that he invokes applies where "the issue is deemed a wrong capable of repetition yet evading review." *Id.* (internal quotation marks and citation omitted). In his efforts to have the ban rescinded, Cephas's principal argument has been

3

that he was not provided the requisite notice that the ILA hearing—which he characterizes as solely a trusteeship proceeding—could result in his being disciplined. As a consequence, he contends that, in the absence of a Court ruling on the issue, "other union members will inevitably find themselves facing member discipline in a trusteeship proceeding." Appellant's Reply Br. 17.

To support this contention, Cephas directs us to the Supreme Court's decision in *International Organization of Masters, Mates & Pilots v. Brown*, 498 U.S. 466 (1991). The case involved a candidate for union office in a prior election who complained about a union rule that prevented his being provided mailing labels containing the names and addresses of union members in advance of the union's nominating convention. *Id.* at 468–70. "[E]ven though [the candidate's] campaign literature ha[d] been distributed and even though he lost the election by a small margin," the Court held that the case was not moot. *Id.* at 473. It deemed the controversy "sufficiently capable of repetition to preserve [its] jurisdiction" because (1) the complainant "may well" run for office again, and (2) "the [u]nion's rule would again present an obstacle to preconvention mailing . . . ." *Id.*; *see also id.* n.8 (noting that the "Secretary of Labor ha[d] persuaded the District Court to order a new election" and that the "Respondent remain[ed] a candidate").

This case is inapposite, and we are unpersuaded.

As an initial matter, nothing in the record indicates that the ILA has adopted a rule that it will discipline union members by way of proceedings that are designated as only pertaining to trusteeship. At every turn, the ILA has urged that it provided Cephas the

4

requisite notice of the charges against him, and the District Court granted judgment in its favor in that regard. *Cephas*, 2018 WL 4326939 at \*4 ("The [ILA hearing committee] properly heard all charges against Cephas under both . . . [the] disciplinary provisions and . . . the trusteeship provision in a *consolidated hearing*." (emphasis added)).

By the same token, the exception Cephas identifies is a narrow one that "applies only in exceptional situations where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the *same* complaining party will be subject to the *same* action again." *Hamilton*, 862 F.3d at 335 (internal quotation marks and citation omitted) (emphases added). Unlike the union rule at issue in *Brown*, the wrong Cephas complains of is "necessarily predicated on the *unique* features of a particular series of events . . . ." *Id.* at 336 (internal quotation marks omitted) (quoting *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 33 (3d Cir. 1985)). To again be subject to the same restrictions on his ability to run for office in the same manner, Cephas would not only have to run for office, but he would also have to be elected, he and his new band of fellow officers would have to engage in behavior that is viewed as warranting the ILA's intervention, and, despite those charges "referenc[ing] allegations of violations" of disciplinary provisions, Appellant's Op. Br. 12, he would have to not receive sufficient notice that discipline was in play. "Nothing on this record apprises us of the likelihood of a similar chain of events . . . ." *Jersey Cent. Power & Light*, 772 F.2d at 33.

We will dismiss accordingly.

5