**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1964
_____

AMERICAN RESORT DEVELOPMENT ASSOCIATION, RESORT OWNERS'
COALITION; KIMBERLY STONECIPHER FISHER REVOCABLE LIVING TRUST;
TRUSTEE KIMBERLY STONECIPHER-FISHER; GREAT BAY CONDOMINIUM
OWNERS ASSOCIATION INC.,
Appellants

v.

GOVERNMENT OF THE VIRGIN ISLANDS

_____

No. 20-1965
_____

GREAT BAY CONDOMINIUM OWNERS ASSOCIATION INC.; TIMOTHY
O'BRIEN; KEITH CHEATHAM,
Appellants

v.

GOVERNMENT OF THE VIRGIN ISLANDS; MARVIN L. PICKERING
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Nos. 3:17-cv-00032-RAM-RM and 3:17-cv-00033-RAM-RM)
District Judge:  Honorable Curtis V. Gomez
_____

Argued December 8, 2020
_____

Before: SMITH, Chief Judge, CHAGARES and MATEY, Circuit Judges.

(Filed: March 8, 2021)

Carl W. Hittinger     [ARGUED]
Tyson Y. Herrold
Michael J. Semes
Jeanne-Michele Mariani
Baker & Hostetler
2929 Arch Street
Cira Centre, 12th Floor
Philadelphia, PA 19104

    Counsel for Appellants in 20-1964

W. Mark Wilczynski
Law Office of W. Mark Wilczynski, P.C.
P.O. Box 1150
Palm Passage, Suite C20-22
St. Thomas, VI 00804

    Counsel for Appellants 20-1965

Geoffrey P. Eaton     [ARGUED]
Lauren K. Gailey
Winston & Strawn
1901 L Street, N.W.
Washington, DC 20036

Sean H. Suber
Winston & Strawn
35 West Wacker Drive
46th Floor
Chicago, IL 60601

Denise N. George, Attorney General

Pamela R. Tepper, Solicitor General
Carol Thomas-Jacobs, Chief Deputy Attorney General
Department of Justice
Government of the U.S. Virgin Islands
34-38 Kronprindsens Gade
GERS Complex, Second Floor
St. Thomas, VI 00802

    Counsel for Appellees

_____

OPINION[*]

_____

CHAGARES, Circuit Judge.

After the Virgin Islands levied a tax on timeshare stays, two coalitions of timeshare owners and owner associations filed a lawsuit against the Territory to challenge the Timeshare Tax's constitutionality. The District Court upheld the Tax, and the coalitions appealed, arguing that the Tax violates the Constitution's dormant Commerce Clause. We hold that the Tax is constitutional. We therefore will affirm.

I.

We write primarily for the parties, and so recite only the facts necessary to our disposition.

At the center of these consolidated appeals is the Virgin Islands' timeshare occupancy tax (the "Timeshare Tax" or "Tax"). The Tax levies a $25 flat fee on each

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

3

timeshare unit within the Territory for each night a unit's owner occupies that unit. See

V.I. Code Ann. tit. 33 [hereinafter 33 V.I.C.], § 54(b)(2), (b)(3)(A). The Tax applies to

all timeshare units in the Virgin Islands, without regard to whether the unit's owner is a

Virgin Islands resident. See id. § 54(b)(3). As a practical matter, because the Virgin

Islands has few residents but a large tourism industry, non-residents own over 99% of the

interests in timeshare units within the Territory and contribute most revenue the Tax

raises. See Appendix ("App.") 104, 106-09.

The Territory enacted the Tax as a revenue-raising measure in early 2017. Then-

Governor Kenneth Mapp proposed the Tax as an instrument that could extract revenue

without burdening local taxpayers. Mapp also emphasized that the Tax would help offset

tourism's burdens on the Territory's infrastructure. The Virgin Islands Senate issued a

committee report reflecting a similar purpose for the Tax, and passed a bill implementing

the Tax in February 2017.

Shortly thereafter, two coalitions of individual timeshare owners and timeshare

owner associations filed a lawsuit against the Territory to challenge the Tax's

constitutionality.[1] Although the coalitions initially advanced several constitutional

claims against the Territory, the ones that remain relevant are the coalitions' claims that

the Tax violates the dormant Commerce Clause because it discriminates against interstate

commerce. The District Court consolidated the two lawsuits in January 2019. The

---

[1] See Am. Resort Dev. Ass'n-Resort Owners' Coal. v. Virgin Islands, No. 3:17-cv-32 (D.V.I. filed May 1, 2017); Great Bay Condo. Owners Ass'n, Inc. v. Virgin Islands, No. 3:17-cv-33 (D.V.I. filed May 3, 2017).

4

parties stipulated to a record and proceeded to a trial on the papers under Federal Rule of Civil Procedure 52(a). From that record, the District Court held the Tax to be constitutional under the dormant Commerce Clause and entered judgment for the Territory. The coalitions then timely appealed.

II.

The parties dispute whether the federal courts may exercise jurisdiction over this case. The District Court ordinarily has jurisdiction over disputes arising under federal law per 28 U.S.C. § 1331 and 48 U.S.C. § 1612(a). But the Territory contends that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, deprives us and the District Court of jurisdiction over this dispute. We exercise plenary review over this challenge to federal subject matter jurisdiction. Hamilton v. Bromley, 862 F.3d 329, 333 (3d Cir. 2017).

The Territory's jurisdictional challenge is misplaced because the TIA does not apply to the Virgin Islands. The TIA bars actions to "enjoin, suspend or restrain the…collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (emphasis added). The Virgin Islands are of course not a state, but are instead an unincorporated territory. We recognized this distinction's significance in Pan American World Airways, Inc. v. Virgin Islands, where we held that the TIA does not apply to the Territory in light of the broad jurisdiction given to the District Court of the Virgin Islands under 48 U.S.C. § 1612. 459 F.2d 387, 391 (3d Cir. 1972); see also Bluebeard's Castle, Inc. v. Virgin Islands, 321 F.3d 394, 397 n.5 (3d Cir. 2003) ("[T]he [TIA] does not apply to the Virgin Islands").

5

Nothing in the past half-century has disturbed <u>Pan American</u>'s status as governing law. Although the Territory points to our decision in <u>Berne Corp. v. Virgin Islands</u>, there we merely assumed — but did not decide — that the TIA applied. 570 F.3d 130, 136-37 (3d Cir. 2009). Moreover, we did so from narrow language in a U.S. Senate report regarding the repeal of provisions governing property taxes in the Virgin Islands Organic Act that is not applicable here.[2] <u>Id.</u> Indeed, if we are to look beyond the TIA's text, we would be remiss to ignore 48 U.S.C. § 872, which extends the TIA's prohibition on "suit[s] for the purpose of restraining the assessment or collection" of local taxes to Puerto Rico and its federal district court. Because Congress apparently saw it as necessary to extend the TIA to Puerto Rico explicitly, we will not interpret Congress's repeal of a federal statute governing local property taxes—or the report accompanying the same—to extend the TIA to the Virgin Islands by mere implication.

We therefore are unpersuaded that the TIA deprives the federal courts of jurisdiction over this dispute and are satisfied that the District Court properly exercised jurisdiction under 28 U.S.C. § 1331 and 48 U.S.C. § 1612(a).[3] We have jurisdiction over

---

[2] In <u>Berne</u>, we drew our assumption from a U.S. Senate report's language describing "[t]he assessment and collection of real property taxes" as "a local government issue with no Federal impact" where no other state or territory faces federal restrictions. 570 F.3d at 137 (quoting S. Rep. No. 110-19, at 1 (2007)). That language is inapplicable here because the Virgin Islands codifies the Timeshare Tax as an excise tax rather than a real property tax, <u>see</u> 33 V.I.C. §§ 41-58, and because the Timeshare Tax is not related to the value of any underlying real property as would be the case for a real property tax.

[3] The Territory also urges us to affirm and refrain from reaching the merits of this dispute under the tax comity doctrine, which bars taxpayers from asserting 42 U.S.C. § 1983 challenges to states' tax systems in federal court on comity grounds. <u>See</u> <u>Fair Assessment in Real Estate Ass'n Inc. v. McNary</u>, 454 U.S. 100, 116 (1981). But because "[un]like the TIA, the comity doctrine is nonjurisdictional," <u>Direct Mktg. Ass'n v. Brohl</u>,

6

this appeal from a final decision under 28 U.S.C. § 1291. "On appeal from a judgment entered after a non-jury trial, we review findings of fact for clear error, Fed. R. Civ. P. 52(a), and conclusions of law de novo." Hooven v. Exxon Mobil Corp., 465 F.3d 566, 572 (3d Cir. 2006).

III.

The coalitions ask us to hold that the Timeshare Tax violates the Constitution's dormant Commerce Clause. Because the Tax does not discriminate against interstate commerce, we will not do so here.

We use a four-part test to determine whether a tax violates the dormant Commerce Clause. A tax survives under the dormant Commerce Clause so long as it "(1) applies to an activity with a substantial nexus with the taxing [Territory], (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services the [Territory] provides." South Dakota v. Wayfair, Inc., 138 S. Ct. 2080, 2091 (2018) (citing Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279 (1977)).[4] There is no dispute that the Tax has a sufficient nexus with the Territory, is fairly apportioned, and is related to the services that the Territory provides. Our inquiry therefore turns to whether the Tax discriminates against interstate commerce. To resolve that question, we examine whether the Tax "is facially discriminatory, has a discriminatory intent, or has

---

575 U.S. 1, 15 (2015), and we will affirm on the merits, we need not determine whether the tax comity doctrine applies.

[4] Although the Virgin Islands is an unincorporated territory rather than a state, we apply dormant Commerce Clause principles "when territorial enactments affect interstate or foreign commerce." Polychrome Int'l Corp. v. Krigger, 5 F.3d 1522, 1534 (3d Cir. 1993).

the effect of unduly burdening interstate commerce." Amerada Hess Corp. v. Dir., Div. of Tax'n, 490 U.S. 66, 75 (1989).

The coalitions argue that the Timeshare Tax discriminates against interstate commerce in effect and intent because the Territory designed it to raise revenue overwhelmingly from non-residents of the Virgin Islands. But that theory is foreclosed for this type of tax by the Supreme Court's decision in Commonwealth Edison Co. v. Montana, 453 U.S. 609 (1981).

In Commonwealth Edison, the Supreme Court considered Montana's severance tax on each ton of coal mined in the state. Id. at 612-13. Under Montana's severance tax, every taxpayer paid the same rate on each ton of coal, regardless of whether the taxpayer was a Montana resident or business. See id. at 618-19. But because Montana had few people, it exported over 90% of its coal. The severance tax's burden accompanied that coal, so out-of-state utilities and their customers contributed most of the revenue the severance tax raised. See id. at 617-18.

The Court held that despite this allocation of the severance tax's burden, it had no discriminatory effect on interstate commerce. Id. at 618. Because "the tax burden [was] borne according to the amount of coal consumed and not according to any distinction between in-state and out-of-state consumers," it did not constitute "differential tax treatment of interstate and intrastate commerce." Id. at 618-19. Rather, the differential treatment that justifies a finding of discriminatory effect occurs when a state engages in economic protectionism that "creates…barriers…against interstate" firms, "prohibit[s] the flow of interstate goods, place[s] added costs upon them, or distinguish[es] between

8

in-state and out-of-state companies" in a state's internal market.  Exxon Corp. v. Governor, 437 U.S. 117, 126 (1978); see also Bacchus Imps., Ltd. v. Dias, 468 U.S. 263, 270 (1984).

None of those discriminatory effects are present here.  Like Montana, the Territory taxes resident and non-resident taxpayers at equal rates.  Like Montana, the Territory apportions its tax based on consumption:  instead of coal mined, the Territory taxes the nights timeshare owners stay at the property in which they have an interest.  And like Montana's tax, the Territory's tax incurs a disproportionate burden because the national market for a consumer good — coal for Montana, tourist lodging for the Territory — is far larger than the local one.  Montana's and the Virgin Islands' respective taxes therefore share a similar economic structure.  So just as the Supreme Court concluded that equal treatment of taxpayers and apportionment by consumption ensured Montana's tax had no discriminatory effect, we conclude that the Territory's Tax is similarly nondiscriminatory.

Nor do the coalitions' arguments for the existence of discriminatory intent have any traction.  It is clear from the record that the Territory intended the Timeshare Tax to maximize new revenue while minimizing any impact on the Territory's residents.[5]

---

[5] Because the record is sufficient to support the plaintiffs' favored theory of the Territory's intent and we nonetheless affirm, we do not need to reach the merits of the coalitions' claim that the District Court should have permitted plaintiff American Resort Development Association-Resort Owners Coalition to depose Governor Mapp. Moreover, given the clarity of the public record, we are unpersuaded that the District Court erred — let alone abused its discretion — in refusing to allow Governor Mapp's deposition.  See Eisai, Inc. v. Sanofi Aventis U.S., LLC, 821 F.3d 394, 402 (3d Cir.

Commonwealth Edison establishes that there is nothing unconstitutional about the Territory's goal of a "tax burden…borne primarily by out-of-state consumers," 453 U.S. at 618, and the Supreme Court has rejected "an approach to the dormant Commerce Clause requiring an assessment of the likely demand for a particular good by nonresidents and a State's ability to shift its tax burden out of State." Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 579 n.13 (1997). We therefore see nothing inherently discriminatory in the Territory's intent to shift its tax burden to non-resident consumers.

Moreover, we could not conclude the Timeshare Tax reflects discriminatory intent or effect without casting a cloud over numerous other tourist taxes. These taxes include not only the Virgin Islands' standard hotel tax, see 33 V.I.C. § 54(a)-(b) — which the coalitions do not challenge — but also many other jurisdictions' taxes on parking or lodging that courts have relied on Commonwealth Edison to uphold, see, e.g., Saban Rent-a-Car LLC v. Ariz. Dep't of Revenue, 434 P.3d 1168, 1173 (Ariz. 2019), cert. denied, 148 S. Ct. 195 (2019) (Mem.); In re Tariff Filing of Cent. Vt. Pub. Serv. Corp., 711 A.2d 1158, 1159, 1160 (Vt. 1998). The Timeshare Tax shares an economic structure with these other taxes that are designed to capture consumption spending by nonresidents. Just as Commonwealth Edison instructs that those taxes do not

---

2016) ("We review discovery decisions for abuse of discretion."); Pichler v. UNITE, 585 F.3d 741, 746 n.6 (3d Cir. 2009) (same in context of a protective order).

discriminate against interstate commerce, it supports the constitutionality of the Timeshare Tax here.

Finally, we are unpersuaded by the coalitions' attempt to distinguish this case from Commonwealth Edison by casting themselves as commercial interests rather than as consumers. In an argument first raised in their reply brief, the coalitions ask us to conclude the Tax is discriminatory because "[i]f nonresident timeshare owners wish to rent their interest, potential customers also have the choice of renting condominiums from residents," and the Tax competitively harms timeshare owners by imposing an extra $25 daily cost on them and potential customers. American Resort Development Association-Resort Owners Coalition Reply Br. 10. The coalitions argue that the Tax therefore commercially disadvantages them relative to Virgin Islands residents who own apartments and condominiums and rent them to tourists. Id. at 9-10.

We ordinarily will not reach arguments first raised in a reply brief, so we need not consider this argument at all. See Barna v. Bd. of Sch. Dirs., 877 F.3d 136, 145-46 (3d Cir. 2017). And although the coalitions tried to cast this new theory of discrimination as a permissible response to the arguments in the Territory's brief, it nonetheless fails on the merits. Despite the businesslike title "timeshare owner," timeshare ownership itself merely confers the right to stay at a property for some time as a guest. See App. 10-11. Because the Tax falls on timeshare owners when they use their timeshare interests to stay at properties in the Territory, see 33 V.I.C. § 54(a)(3), (b)(1)-(2), (b)(3)(A), it reaches owners as consumers rather than as business interests. Indeed, the Timeshare Tax does not apply to stays where visitors have "rented or leased [a]…timeshare," who instead pay

11

the Virgin Islands' 12.5% hotel tax.  Id. § 54(a)(3), (b)(1).  And even if the Tax did apply to secondary market rentals, the coalitions have not pointed to any legal reason why nonresidents could not own apartments or condominiums to lease to tourists on the same terms as residents, nor have they developed any record as to whether residents or nonresidents disproportionately own such properties.  See Rosenblatt v. City of Santa Monica, 940 F.3d 439, 450 (9th Cir. 2019) (holding that a restriction on short-term rentals did not violate the dormant Commerce Clause because "[a] hotel…can be owned by an in-state or out-of-state person or entity, just as would-be vacation rentals can").  We therefore cannot conclude that the coalitions have shown a plausible alternate theory of discrimination against interstate commerce.

## IV.

For the foregoing reasons, we will affirm the District Court's order granting judgment to the Territory.