NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3518
_____

CHAD PARKER; REBECCA KENWICK-PARKER; MARK REDMAN; DONNA
REDMAN,
Appellants

v.

GOVERNOR OF PENNSYLVANIA; ATTORNEY GENERAL PENNSYLVANIA;
SECRETARY PENNSYLVANIA DEPARTMENT OF HEALTH
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-20-cv-01601)
District Judge:  Honorable John E. Jones, III
_____

Argued:  September 23, 2021
_____

Before:  CHAGARES, HARDIMAN, and MATEY, Circuit Judges

(Opinion filed: November 23, 2021)
_____

Robert J. Muise [ARGUED]
American Freedom Law Center
P.O. Box 131098
Ann Arbor, MI 48113

     Counsel for Appellants

J. Bart DeLone
Sean A. Kirkpatrick [ARGUED]
Office of Attorney General of Pennsylvania

Strawberry Square
Harrisburg, PA 17120

Daniel B. Mullen
Office of Attorney General of Pennsylvania
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

Claudia M. Tesoro
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103

Counsel for Appellees

_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

The Commonwealth of Pennsylvania implemented several public health measures to limit the spread of COVID-19. The plaintiffs in this case argue that two such measures, a contact tracing program and mask mandate, are unconstitutional. They now appeal the District Court's denial of a preliminary injunction that would have prevented the defendants from enforcing both measures. The United States Constitution limits the cases that federal courts can decide and commands that we only decide "cases" or "controversies." This means that we cannot decide cases where an issue has become moot or where the parties lack standing to bring a claim. The plaintiffs here have not

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

made the threshold showing that this case fits within those constitutional constraints. Accordingly, we will affirm the order of the District Court.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. The first public health measure at issue in this case is a contact tracing program, whereby the Commonwealth's Department of Health ("DOH") seeks to identify, notify, and monitor anyone who came in close contact with a person who tested positive for COVID-19 during the period in which that person was infectious. The Commonwealth also sends a letter to potentially infected contacts that directs them to self-quarantine for fourteen days after their last contact with someone who was likely infected. If a recipient fails to cooperate, the DOH may petition a court to isolate that person and call upon law enforcement to effectuate the court's order; the DOH has yet to do so.

The other measure challenged in this case is a mask mandate first implemented by an order of the Secretary of Health on July 1, 2020. The Secretary issued this mandate following the suspension of business closure and stay-at-home orders, citing CDC guidance indicating that wearing masks helps to prevent and control further spread of COVID-19. The mandate required Pennsylvanians aged two and older to wear a face covering in various settings including indoors or outdoors where social distancing cannot be maintained. The mandate expired by its own terms on June 28, 2021. See Department of Health Lifting Universal Masking Order on June 28 (June 25, 2021), https://www.media.pa.gov/pages/health-details.aspx?newsid=1505.

3

The plaintiffs are Chad Parker and Rebecca Kenwick-Parker, as well as Mark and Donna Redman. They view masks as political symbols expressing that "all people are diseased" and that mask wearers have "surrendered [their] freedom to the government," and they believe the mandate compels them to express this message even though they disagree with it. Appendix ("App.") 80, 265, 282. They also believe that wearing a mask violates their rights to privacy and personal autonomy. Parker tested positive for COVID-19 in July 2020 and was contacted by the DOH, who asked him questions about his contacts from the previous two weeks. The Parker family was then directed to self-quarantine. The Parkers found this experience intrusive and now fear they will be subjected to surveillance and a future quarantine. They claim that they have been forced to take costly measures to avoid contact tracing: they now homeschool their son rather than sending him to public school, "think twice" before seeking medical treatment for minor symptoms, and avoid any businesses or events that may document attendees. App. 269–70. The Redmans likewise avoid establishments that may document attendance and have "curtailed attending religious services" because their church now "requires pre-registration in order to attend in-person services." App. 78.

The plaintiffs filed this lawsuit against the Commonwealth's Governor, Attorney General, and Secretary of Health and moved for a preliminary injunction preventing enforcement of either measure. They alleged that both measures violated their First and Fourteenth Amendment rights, and that the contact tracing program also violated their Fourth Amendment rights. The District Court denied the motion, holding that the plaintiffs lacked standing for an injunction as to either measure. The court further held

4

that even if the plaintiffs had standing, the motion would be denied after considering the likelihood of success on the merits, risk of irreparable harm, and balance of equities. The plaintiffs timely appealed.

II.[1]

We review the District Court's findings of fact for clear error, its legal conclusions de novo, and its decision to grant or deny the injunction for abuse of discretion. See Osorio-Martinez v. Att'y Gen., 893 F.3d 153, 161 (3d Cir. 2018).

Article III limits the federal courts to adjudication of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. At every stage in litigation, we must determine whether the case-or-controversy requirement is met in order to ensure that we only decide issues within the bounds of the Constitution and do not give "opinions advising what the law would be upon a hypothetical state of facts." Chafin v. Chafin, 568 U.S. 165, 172 (2013) (cleaned up).

One doctrine encompassed by the case-or-controversy requirement is standing. In order to establish standing to sue, plaintiffs bear the burden to show that (1) they have suffered an injury in fact, (2) the injury is fairly traceable to the conduct of the defendant, and (3) the injury is likely redressable by a favorable decision. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

Another doctrine stemming from the case-or-controversy requirement is mootness.

---

[1] We have jurisdiction to review the denial of a preliminary injunction under 28 U.S.C. § 1292(a). The plaintiffs invoked the District Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, though the court held that it lacked jurisdiction to preliminarily enjoin the contact tracing program or mask mandate.

5

An issue becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Chafin, 568 U.S. at 172 (citation omitted).

As discussed more fully below, the District Court correctly concluded that the plaintiffs lack standing to challenge the contact tracing program. And because the mask mandate expired by its own terms in June 2021, the challenge to that mandate is moot.

A.

The plaintiffs allege two injuries stemming from the contact tracing program: (1) the future threat of again being identified as a close contact through contact tracing and ordered to quarantine, and (2) the changes the plaintiffs have made in order to avoid contact tracing, such as avoiding businesses, schools, and church due to this potential future threat. Neither constitutes an injury in fact, however. A "threatened injury must be *certainly impending*" and "[a]llegations of *possible* future injury are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (emphasis in original). Past exposure to conduct "does not in itself show a present case or controversy regarding injunctive relief" unless accompanied "by any continuing, present adverse effects." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); see also McNair v. Synapse Grp. Inc., 672 F.3d 213, 223 (3d Cir. 2012). Though they fear government surveillance, the Parkers do not allege that they are presently being monitored or forced to disclose information as a result of Parker's past infection.

The District Court found that an attenuated chain of events is required to expose the plaintiffs to the contact tracing program:

[F]irst, they must be in sustained "close contact" . . . with another person;

6

second, that person must receive a test for COVID-19; third, that test must come back either "positive" or "probable"; fourth, that test result is sent to the DOH (which, presumably, might not happen if the individual receives a test in a different state, or if they receive a test from a non-DOH-approved lab, or if the testing lab for some reason is not mandated to report test results through NEDSS); fifth, a DOH contact tracer must call the infected individual; sixth, that individual must actually pick up the phone; and seventh, the individual must tell the contact tracer that he or she was in close contact with one of the Plaintiffs.

App. 24–25. These findings are not clearly erroneous. As the District Court observed, the plaintiffs have limited interpersonal interaction in many ways: their children do not attend school in person, they stopped going to church, they avoid visiting hospitals for minor maladies, and they no longer frequent a number of restaurants and businesses. These actions make the plaintiffs less likely to contract COVID-19 and undergo contact tracing than many Pennsylvanians. The plaintiffs might still experience contact tracing if any close contacts contract the virus, but they have offered no details about their close contacts or any facts reflecting that those contacts will likely become infected.

Courts are "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment," and this case is no exception. Clapper, 568 U.S. at 413. Our reluctance is even greater here, as we cannot presume that the plaintiffs' unspecified close contacts will act in ways that expose themselves to a potentially life-threatening virus. See McNair, 672 F.3d at 225 ("[G]enerally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess."). And participation in the contact tracing program is voluntary for individuals, further diminishing the chances that any of the plaintiffs' close contacts will imminently provide their information to the government. The plaintiffs have not

7

established that they or their close contacts face "certainly impending" contact tracing.

Nor can the plaintiffs' self-imposed injuries of making changes in their behavior confer standing. It is well established that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." Clapper, 568 U.S. at 416. "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." Id. The plaintiffs' behavioral changes may be burdensome, but the plaintiffs themselves made those changes in response to a fear of contact tracing that is not certainly impending. See Laird v. Tatum, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm" and do not suffice to create standing). Because the plaintiffs have failed to show an injury in fact, the District Court properly held that they lack standing to obtain a preliminary injunction of the Commonwealth's contact tracing program.

B.

An appeal becomes moot if events have transpired "that make it impossible for the court to grant any effectual relief whatsoever." County of Butler v. Governor of Pa., 8 F.4th 226, 230 (3d Cir. 2021). Because the statewide mask mandate expired several months ago, there is no relief the Court could grant the plaintiffs regarding that order. There are two possible exceptions to mootness: the "voluntary cessation" doctrine, and the doctrine of "capable of repetition yet evading review." Neither applies here.

The voluntary cessation exception does not apply because the mandate expired by

8

its own terms and not as a response to litigation.  Id.  (citing Trump v. Hawaii, 138 S. Ct. 377 (2017)).  The mask mandate remained in place for many months after its constitutionality was challenged.  It expired by its own terms once vaccines became widely available.  The Court "generally presume[s] that government officials act in good faith."  Id.  Absent any evidence to the contrary, that presumption applies here, and the voluntary cessation exception is inapplicable.

The "capable of repetition yet evading review" exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  Hamilton v. Bromley, 862 F.3d 329, 335 (3d Cir. 2017).  The plaintiffs bear the burden to show that this exception applies.  See Belitskus v. Pizzingrilli, 343 F.3d 632, 648 (3d Cir. 2003).  The exception is "narrow" and it "applies only in exceptional situations."  County of Butler, 8 F.4th at 231.

The plaintiffs have not shown that there is a reasonable expectation that the statewide mask mandate will be reinstated and so the second prong is not met.[2]  The government has represented that the mask mandate was issued in response to the reopening of businesses after the initial shutdown and that it expired based on the availability of vaccines, and Governor Wolf has stated that he does not plan on issuing another statewide mandate in the future.  See Oral Arg. at 20:15–20:30.

---

[2] As in County of Butler, because the second prong is not satisfied, we decline to decide here "[w]hether, as a general matter" orders satisfy the first prong "when they are of sufficiently short duration that they cannot be addressed through the appellate process." Id. at 231 n.3.

The government has not rescinded and then re-issued the order even once, let alone multiple times. That fact distinguishes this case from those relied upon by the plaintiffs, where the Supreme Court held challenges to COVID-19 orders were not moot upon a record of frequent government changes. See Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 68 & n.3 (2020) (citing evidence that "[t]he Governor regularly change[d] the classification of particular areas without prior notice" and that the classification had been changed three times in the previous seven days); see also Tandon v. Newsom, 141 S. Ct. 1294, 1297 (2021) (holding that a case was not moot where there was a "track record" of state officials "moving the goalposts."). Given the evidence in this case, the plaintiffs have not met their burden to show that there is a reasonable expectation that a statewide mask order will be reinstated. The challenge is therefore moot.

## IV.

For the foregoing reasons, we will affirm the order of the District Court.