PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3561
_____

SHERWIN-WILLIAMS COMPANY,
                                    Appellant

v.

COUNTY OF DELAWARE, PENNSYLVANIA; COUNTY
OF ERIE, PENNSYLVANIA; COUNTY OF YORK,
PENNSYLVANIA; JOHN P. MCBLAIN, in his official
capacity as Chairman of the County Council of the County of
Delaware, Pennsylvania; COLLEEN P. MORRONE, in her
official capacity as Vice Chairman of the County Council of
the County of Delaware, Pennsylvania; MICHAEL CULP, in
his official capacity as member of the County Council of the
County of Delaware, Pennsylvania; KEVIN M. MADDEN, in
his official capacity as member of the County Council of the
County of Delaware, Pennsylvania; BRIAN P. ZIDEK, in his
official capacity as member of the County Council of the
County of Delaware, Pennsylvania; DR. KYLE W. FOUST,
in his official capacity as County Council Chairman of the
Erie County Council; FIORE LEONE, in his official capacity
as County Vice Chairman of the Erie County Council;
KATHY FATICA, in her official capacity as Finance
Chairwoman and member of the Erie County Council;
CAROL J LOLL, in her official capacity as Finance Vice

Chairwoman and member of the Erie County Council;
ANDRE R. HORTON, in his official capacity as Personnel
Chairman and member of the Erie County Council; CARL
ANDERSON, III, in his official capacity as member of the
Erie County Council; SCOTT R. RASTETTER, in his official
capacity as member of the Erie County Council; SUSAN
BYRNES, in her official capacity as President of the Board of
Commissioners for York County, Pennsylvania; DOUG
HOKE, in his official capacity as Vice President of the Board
of Commissioners for York County, Pennsylvania; CHRIS
REILLY, in his official capacity as a member of the Board of
Commissioners for York County, Pennsylvania; JOHN DOE
COUNTIES; JOHN DOES

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-04517)
District Judge: Honorable Nitza I. Quiñones Alejandro

_____

Argued June 2, 2020

Before: AMBRO, HARDIMAN, and RESTREPO, *Circuit
Judges*

(Filed: July 31, 2020)

Leon F. DeJulius, Jr. [Argued]
Jones Day
250 Vesey St.
New York, NY 10281

Anderson T. Bailey
Charles H. Moellenberg, Jr.
Jones Day
500 Grant St.
Suite 4500
Pittsburgh, PA 15219
        *Attorneys for Appellant Sherwin-Williams Company*

David S. Senoff [Argued]
Hillary B. Weinstein
First Law Strategy Group
121 South Broad St.
Suite 300
Philadelphia, PA 19107
        *Attorneys for Appellees County of Delaware, et al.*

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

It has been said that the best defense is a good offense. True to that adage, Sherwin-Williams Company sued several Pennsylvania counties to forestall lead-paint litigation those counties seemed poised to file with the assistance of outside counsel motivated by a contingent-fee agreement. The District Court dismissed Sherwin-Williams's complaint for lack of Article III standing. We will affirm.

## I

Sherwin-Williams is an Ohio corporation that manufactures and distributes paint. In Pennsylvania, the company employs nearly 2,000 people in 200 stores, offices, manufacturing plants, and a research and development facility.

In 2018, Lehigh and Montgomery Counties sued Sherwin-Williams (and others) in state court over its manufacture and sale of lead-based paint. The counties pleaded a public nuisance theory of liability and sought abatement of the nuisance caused by lead-based paint, an order enjoining "future illicit conduct" by Sherwin-Williams, and a declaration acknowledging the existence of a public nuisance and Sherwin-Williams's contribution to it. App. 273–74 (Lehigh County complaint); App. 119–21 (Montgomery County complaint). Both counties hired the same law firm on a contingency. Anticipating the same treatment from other counties, Sherwin-Williams went on the offensive. It sued Delaware, Erie, and York Counties, members of each county council, and "John Doe Counties" and "John Does" in the United States District Court for the Eastern District of Pennsylvania to try to prevent them from suing or hiring outside contingent-fee counsel. App. 22–23. When Erie and York Counties responded by stating they would not sue or hire outside counsel, Sherwin-Williams dismissed its claims against them and their councilmembers. So this appeal concerns only Delaware County and its councilmembers.

In its complaint, Sherwin-Williams alleged Delaware County "retained or [is] in the process of retaining counsel and intend[s] to sue Sherwin-Williams in various courts throughout Pennsylvania to pay for the inspection and abatement of lead paint in or on private housing and publicly owned buildings

4

and properties, including federal buildings and properties." App. 26 ¶ 1. It claimed the County, by merely filing suit, will violate its constitutional rights. Sherwin-Williams also alleged "[i]t is likely that the fee agreement between [Delaware County] and the outside trial lawyers [is] or will be substantively similar to an agreement struck by the same attorneys and Lehigh County to pursue what appears to be identical litigation." App. 47 ¶ 65. And it asserted that, by forming (or planning to form) this agreement with outside counsel, "the Count[y] ha[s] effectively and impermissibly delegated [its] exercise of police power to the private trial attorneys." *Id.* Based on these allegations, Sherwin-Williams raised three claims under 42 U.S.C. § 1983.

In Count I, the company pleaded a First Amendment violation, seeking declaratory and injunctive relief. It asked the District Court to prevent the County from trying to hold Sherwin-Williams liable for "(i) its membership in [trade associations]; (ii) the activities of the [trade associations], including those that Sherwin-Williams did not join, fund, or approve; (iii) Sherwin-Williams' purported petitioning of federal, state and local governments; and (iv) Sherwin-Williams' commercial speech." App. 49–50 ¶ 73. To support this claim, the company alleged it "has reconsidered and continues to question its membership in various trade organizations and its petitioning to the government on any issues." App. 33 ¶ 14. And it claimed that the County's potential lawsuit "impermissibly chills its speech and associational activities." *Id.*

In Count II, Sherwin-Williams sought declaratory and injunctive relief to preclude the County's potential lawsuit. It claimed the County's (unarticulated) public nuisance theory would seek to impose liability "(i) that is grossly

5

disproportionate; (ii) arbitrary; (iii) impermissibly retroactive; (iv) without fair notice; (v) impermissibly vague; and (vi) after an unexplainable, prejudicial and extraordinarily long delay, in violation of the Due Process Clause." App. 52 ¶ 83.

Finally, in Count III, the company alleged the County's contingent-fee agreement (or possible future agreement) with outside counsel violates the Due Process Clause because "[t]he Constitution prohibits vesting the prosecutorial function in someone who has a financial interest in using the government's police power to hold a defendant liable." App. 56 ¶ 94. Sherwin-Williams asked for declaratory and injunctive relief before the County files suit because "once the[] lawsuit[] [is] filed, the Count[y's] financial arrangement with trial attorneys will unlawfully interfere with [its] decision-making, including altering [its] positions or dissuading [it] from seeking appropriate resolutions to the alleged health hazards with which [it is] concerned." App. 57 ¶ 96.

Delaware County moved to dismiss the complaint and Sherwin-Williams moved for partial summary judgment on its due process claim related to the County's agreement with outside counsel. *Sherwin-Williams Co. v. County of Delaware*, 2019 WL 4917154, at *1 (E.D. Pa. 2019). The District Court granted the County's motion to dismiss, holding Sherwin-Williams lacked Article III standing because its "complaint fail[ed] to state facts sufficient to show an actual case [or] controversy." *Sherwin-Williams Co.*, 2019 WL 4917154, at *4. The Court then denied Sherwin-Williams's motion for partial summary judgment as moot.

Because Sherwin-Williams sought only declaratory and injunctive relief, the District Court construed its claims as arising under the Declaratory Judgment Act and explained that

6

a "substantial controversy" must exist between the parties for a plaintiff to sustain a claim under the Act and Article III of the Constitution. *Sherwin-Williams Co.*, 2019 WL 4917154, at *2. The Court observed that "[t]he entirety of Plaintiff's complaint reads like a request for an advisory opinion regarding potential affirmative defenses to a state law case that has not yet been, and may never be, filed." *Id.* at *4. It therefore concluded Sherwin-Williams failed to plead an injury in fact or a ripe case or controversy because the alleged harms hinged on the County actually filing suit. *Id.* at *3–4.

Sherwin-Williams filed this timely appeal.[1]

II

Article III standing requires "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). The plaintiff bears the burden of establishing standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). The District

---

[1] The District Court had jurisdiction to determine its own jurisdiction. *See, e.g.*, *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 142 (3d Cir. 2017). We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's orders. We review Rule 12(b)(1) dismissals de novo. *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014).

Court dismissed Sherwin-Williams's complaint because the company failed to plead actual injury. We agree.[2]

Injury in fact requires "the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Finkelman*, 810 F.3d at 193 (citation and internal quotation marks omitted). "A harm is 'actual or imminent' rather than 'conjectural or hypothetical' where it is presently or actually occurring, or is sufficiently imminent. . . . [P]laintiffs relying on claims of imminent harm must demonstrate that they face a realistic danger of sustaining a direct injury from the conduct of which they complain." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (citation omitted). "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citation omitted). And a party seeking equitable relief for a prospective injury, like Sherwin-Williams here, must show a "likelihood of substantial and

---

[2] Sherwin-Williams argues the District Court's order "cannot stand" based, in part, on two particular errors. Sherwin-Williams Br. 34. First, the District Court relied on the dissenting opinion in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), as if it were the majority opinion. *Sherwin-Williams Co.*, 2019 WL 4917154, at *4. Second, in addressing whether Sherwin-Williams had Article III standing, the Court erroneously relied on *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952). In *Wycoff Co.*, the Supreme Court addressed statutory federal question jurisdiction, not Article III standing. These errors do not require reversal because the District Court's holding is well supported by applicable law.

immediate irreparable injury" to establish standing. *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974).

Declaratory judgments are often forward-looking, but they are "limited to cases and controversies in the constitutional sense." *Wyatt, Virgin Islands, Inc. v. Gov't of V.I.*, 385 F.3d 801, 805 (3d Cir. 2004) (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240 (1937)). We may review only "concrete legal issues, presented in actual cases, not abstractions . . . . This is as true of declaratory judgments as any other field." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947)) (internal quotation marks omitted).

Sherwin-Williams asserts—and the County does not dispute—that it leveled a "facial" attack on the District Court's jurisdiction. So "we accept [Sherwin-Williams's] well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in [its] favor." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). Although a complaint need only be "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III

We first consider whether Sherwin-Williams established Article III standing by sufficiently pleading injury in fact.

## A

In Counts I and II of its complaint, Sherwin-Williams failed to allege an existing injury or one that was "certainly impending" as a result of the anticipated litigation from Delaware County. *See Whitmore*, 495 U.S. at 158. The company did not plead an existing First Amendment injury based on the County's potential lawsuit because "generalized allegations" of chilled speech cannot establish an existing injury. *See Pa. Family Inst. v. Black*, 489 F.3d 156, 166 n.10 (3d Cir. 2007). Instead, an allegation that certain conduct has (or will have) a chilling effect on one's speech must claim a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Sherwin-Williams's claim that the specter of the County's potential lawsuit has caused it to "reconsider[] and . . . question its membership in various trade organizations and its petitioning to the government on any issues," App. 33 ¶ 14, is a "generalized allegation[]" insufficient to satisfy Article III's requirements. *Pa. Family Inst.*, 489 F.3d at 166 n.10.

Sherwin-Williams also claims it sufficiently alleged an imminent injury in Counts I and II based on a potential lawsuit by the County. But even if it could show that a *lawsuit* were certainly impending, it did not establish that such a lawsuit would cause a concrete *injury* to its constitutional rights. The company's constitutional claims in Counts I and II rest on what it anticipates the County might allege in a hypothetical lawsuit.

10

Such speculation cannot satisfy Article III's standing requirements. *See Aetna Life Ins. Co.*, 300 U.S. at 241 (explaining federal courts may not issue "opinion[s] advising what the law would be upon a hypothetical state of facts"). Specifically, Sherwin-Williams asks us to assume not only that the County will sue, but also its theory of liability, its litigation tactics, and that the County will prevail. App. 49–52, ¶¶ 73–80. The County may proceed as Sherwin-Williams predicts. Or it may not. And who knows whether the County would win? That uncertainty—and all of the contingencies that go along with it—expose Sherwin-Williams's inability to allege an existing injury or one that is "certainly impending." *See Whitmore*, 495 U.S. at 155, 158.

Moreover, Sherwin-Williams failed to show a "likelihood of substantial and immediate irreparable injury" absent declaratory and injunctive relief. *See O'Shea*, 414 U.S. at 502. Any injury to Sherwin-Williams's First Amendment or due process rights would not be irreparable. If the County sues, Sherwin-Williams can raise those claims as affirmative defenses in state court. *See Sherwin-Williams Co. v. City of Columbus*, 2008 WL 839788, at *3 (S.D. Ohio 2008). And the company failed to explain why such defenses would be inadequate. So any harm to its constitutional rights would be neither "substantial" nor "irreparable."

Sherwin-Williams's preemptive suit differs significantly from another pre-enforcement case in which we found Article III standing. In *Khodara Envt'l, Inc. v. Blakey*, 376 F.3d 187, 194 (3d Cir. 2004), we considered whether a federal statute precluded development of a landfill. Instead of developing the landfill first and risking enforcement actions by the government, the plaintiff sought a judgment declaring its rights under federal law. We held that the plaintiff had standing

11

to pursue declaratory relief before the government took steps to block the landfill's development because "it [was] apparent that it would [have been] inordinately expensive and impractical from a business standpoint" to force the plaintiff to act first and litigate later. *Id.* And it was undisputed that, if the plaintiff received a favorable ruling, it would develop the landfill. *Id.*

Here, by contrast, Sherwin-Williams is not seeking clarification of its rights so it can take some affirmative business action, and any conduct for which Delaware County might sue has already occurred. Sherwin-Williams is instead trying to preempt the County's supposedly imminent lawsuit with affirmative defenses it could raise in response to any suit that might be filed. And unlike the plaintiff in *Blakey*, Sherwin-Williams has failed to show that defending against a lawsuit (rather than pursuing this one) would be "inordinately expensive and impractical." *Id.*

For these reasons, we hold that Sherwin-Williams lacks standing to pursue Counts I and II of its complaint.

B

Sherwin-Williams also failed to plead an existing or imminent injury sufficient to establish Article III standing for

12

its claim in Count III.[3] There, the company claimed it suffered (and continues to suffer) an injury to its due process rights because the County formed a contingent-fee agreement with outside counsel. In particular, it claimed this arrangement "violate[s its] due process right to have a financially disinterested public official prosecuting a public nuisance suit brought on behalf of the public." App. 56 ¶ 93.

Because Delaware County did not execute its current agreement with outside counsel until more than a week after Sherwin-Williams filed its complaint, the company did not explain how the specific terms of that engagement letter infringe its due process rights. Instead, it assumed the County's agreement would mirror other counties' agreements and attached Lehigh County's engagement letter to its complaint. That assumption turned out to be wrong—in its engagement letter, Delaware County "retain[ed] complete control over the course and conduct of the litigation." *See* App. 226 (also explaining that the County has "real (not illusory) control over the litigation"). Sherwin-Williams cannot establish an existing injury based on that agreement's specific terms.

That leaves Sherwin-Williams's argument that the contingent-fee arrangement will nonetheless cause some future injury by tainting an investigation and lawsuit by the County.

---

[3] The District Court did not specifically address whether Sherwin-Williams had standing to pursue this claim. The company argues this "requires reversal," Sherwin-Williams Br. 18, but because this is a question of law we can resolve it in the first instance. *See Wujick v. Dale & Dale, Inc.*, 43 F.3d 790, 792–93 (3d Cir. 1994) (addressing, for the first time on appeal, whether the district court had subject matter jurisdiction).

The company alleged: "[O]nce these lawsuits are filed, the Counties' financial arrangement with trial attorneys will unlawfully interfere with the Counties' decision-making, including altering their positions or dissuading them from seeking appropriate resolutions to the alleged health hazards with which they are concerned." App. 57 ¶ 96. The actual terms of the agreement with outside counsel belie this claim. Delaware County retained full control over potential litigation and does not stand to benefit from the contingent-fee arrangement, so Sherwin-Williams's claims of impending injury were (and are) unfounded. It also argues its "rights can be protected only by determining" this issue before the County sues, *id.*, but it fails to show an irreparable injury justifying pre-suit relief. *See O'Shea*, 414 U.S. at 502.

Like the company's other claims, Count III assumes too much. Sherwin-Williams will suffer no harm if the County decides not to sue. And if it does sue, an injury may arise only if the County violates its own agreement and cedes control to outside counsel. That injury, if any, is neither existing nor certainly impending. So it cannot satisfy the requirements for Article III standing.

IV

Even if Sherwin-Williams could satisfy Article III's injury-in-fact requirement, its claims would not be ripe for review. "At its core, ripeness works 'to determine whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). "A dispute is not ripe for judicial

14

determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Claims based merely upon assumed potential invasions of rights are not enough to warrant judicial intervention." *Wyatt*, 385 F.3d at 806 (internal citations and quotation marks omitted).

Sherwin-Williams insists its claims are ripe by citing our statement that a "party seeking declaratory relief need not wait until the harm has actually occurred to bring the action." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). But it ignores the requirement that a party "must demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Salvation Army v. Dep't of Cmty. Affairs,* 919 F.2d 183, 192 (3d Cir. 1990)). And it fails to overcome our holding that "[a] dispute is not ripe for judicial determination 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Wyatt*, 385 F.3d at 806 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Each of Sherwin-Williams's claims fits that description.

In *Wyatt*, we held an employer's claims for declaratory relief against the government of the Virgin Islands were not ripe because, although the government issued cease-and-desist letters telling the employer to stop certain business practices and the Attorney General of the Virgin Islands issued an opinion letter declaring the case "ripe for injunctive and/or declaratory relief," the government had taken no formal steps to proscribe the employer's conduct. *Id.* at 803–04. Delaware County has taken even fewer steps than the government had taken in *Wyatt*. In fact, according to Sherwin-Williams's complaint, the only action Delaware County has taken towards filing suit is hiring outside counsel. The County might sue

15

Sherwin-Williams, but it might not. It might advance the same arguments as other counties, but it might not. The uncertainty surrounding these fundamental questions renders these claims unfit for judicial resolution. *Wyatt*, 385 F.3d at 806.

In short, Sherwin-Williams's claims are not ripe largely for the same reasons they fail to satisfy the injury-in-fact requirement—they require speculation about whether the County will sue and what claims it would raise.

\* \* \*

We agree with the District Court's determination that Sherwin-Williams lacked Article III standing. The harms it alleges are hypothetical and conjectural. And any harm it may suffer as a result of a future lawsuit by Delaware County is redressable in the context of that case, should it ever occur. We will therefore affirm the orders of the District Court.[4]

---

[4] Because we will affirm the dismissal order, we will also affirm the order denying partial summary judgment as moot.