NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1008
_____

ANDREW J. DANKANICH; NICHOLAS A. MARRANDINO,
Appellants

v.

MARCEL PRATT, City Solicitor of Philadelphia; CITY OF PHILADELPHIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-0735)
District Judge:  Honorable Mitchell S. Goldberg
_____

Submitted Under Third Circuit LAR 34.1(a)
November 19, 2021

Before:   AMBRO, JORDAN, and ROTH, *Circuit Judges*

(Filed: December 9, 2021)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Andrew Dankanich and Nicholas Marrandino, two former Philadelphia Parking

Authority ("PPA") employees, sought to bring a *qui tam* complaint on behalf of the City

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

of Philadelphia against high-ranking PPA officials. When the City Solicitor's Office declined to authorize their suit or have the City itself file suit, they sued the City and its then-Solicitor, Marcel Pratt. On appeal, Dankanich and Marrandino argue that the District Court improperly dismissed their First Amendment and Pennsylvania Local Agency Law ("LAL") claims. We will affirm.

## I. BACKGROUND

Dankanich and Marrandino (the "Appellants") worked for the PPA until being terminated in 2017. During their tenure, they became aware of what they describe as a "conspiracy" among high-ranking PPA officials to fraudulently secure contracts worth roughly $100 million for a company called Conduent State and Local Services, Inc. to service the PPA's Red Light Camera program.[1] The Appellants claim that Conduent received the contracts despite being unqualified and that, due to the corrupt scheme, the City failed to collect millions of dollars in penalties that Conduent owed.

The Appellants decided to challenge that misconduct by bringing a *qui tam* complaint under Philadelphia's False Claims Ordinance, Phila., Pa., Code §§ 19-3601 to -3606. That ordinance allows "[a]ny person" to submit to the City Solicitor a proposed complaint seeking to recover, on the City's behalf, any fraudulently acquired City property or money. *Id.* §§ 19-3602, -3603(2). The City Solicitor is authorized to investigate the complaint and may take one of four actions: bring a civil lawsuit on

---

[1] The Red Light Camera program enables the City of Philadelphia to use an "automated red light enforcement system" operated by the PPA to record traffic violations. 75 Pa. Cons. Stat. § 3116(a), (h).

2

behalf of the City; designate the person who brought the complaint to sue in the name of the City, in which case the City Solicitor may still dismiss the action at any point and still retains "sole authority" over settlement; take no action at all; or "[p]roceed in any other manner the City Solicitor deems appropriate." *Id.* § 19-3603(2), (6)(b). The complainant is entitled to receive a share of the proceeds from any successful suit based on his complaint, as set by a court within a statutory range. *Id.* § 19-3603(8). Relevant to the Appellants' First Amendment claim here, the ordinance also requires that all "[i]nformation submitted by a person in support of a complaint" or "gathered as a result of the City Solicitor's … investigation" be kept "confidential and protected from disclosure to the fullest extent permitted under applicable law." *Id.* § 19-3603(2)(c).

The Appellants submitted a proposed complaint in October 2018. The City, through the Solicitor's Office, declined to either designate the Appellants to file the complaint or to bring suit itself, as it concluded that "the False Claims [Ordinance] did not apply" to the allegations. (J.A. at 41 ¶ 45.) Because the Commonwealth of Pennsylvania rather than the City ran the PPA's Red Light Camera program, the City determined that it could not claim that it was defrauded even if the allegations were true.[2]

---

[2] The Appellants contest that legal conclusion in both their complaint and their briefing before us. The City defends its rationale for the denial. We do not consider the issue, as we hold that the Appellants did not have a cause of action under the LAL, regardless of the merits of the denial.

Unsatisfied with the denial, the Appellants informed the City Solicitor's Office of their intent to file the present suit against the City and Solicitor Pratt in his official capacity. In response, attorneys for the City "demand[ed]" that the Appellants correct their "current proposed filings[,]" which referenced "discussions [the Appellants] had with the City Solicitor's office" and "information [they] plan[ned] to include in the proposed [*qui tam*] complaint against the Parking Authority and other parties[.]" (J.A. at 57 ¶ 135.) Those allegations, the attorneys asserted, did not comply with the confidentiality restrictions of the False Claims Ordinance applicable to "any information shared with the City in support of a proposed complaint[.]" (J.A. at 57 ¶ 135.) When the Appellants pushed back, they were told that "the City has made clear to you its position and you will proceed at your own risk." (J.A. at 57 ¶ 136.) The Appellants interpreted that "stern warning" as "requir[ing]" them to file the lawsuit under seal, which they did. (J.A. at 58 ¶ 137.) Three weeks after they initiated the suit, the Appellants filed a consent motion to unseal the case, and the District Court granted it.

The Appellants alleged that the City's failure to authorize them to file the proposed complaint or to itself bring suit violated their procedural and substantive due process rights, breached a contract, and caused unjust enrichment. They also challenged the City's decision under the LAL, 2 Pa. Cons. Stat. §§ 551-555, 751-754. Finally, they asserted that the requirement in the False Claims Ordinance that "any information shared with the City Solicitor" be kept confidential constituted a violation of their First Amendment free speech rights, both facially and as applied. (J.A. at 65-66.)

4

The City moved to dismiss all the claims for failure to state a claim, and the District Court granted that motion in December 2020. This timely appeal followed. The Appellants only contest the dismissal of their First Amendment and LAL claims.[3]

## II. DISCUSSION[4]

### A. First Amendment claim

As a threshold matter, the City asks us to affirm the dismissal of the First Amendment claim because the Appellants lack standing.[5] The Appellants, however, have alleged a "specific present objective harm or a threat of specific future harm" sufficient to establish standing. *Sherwin-Williams Co. v. County of Delaware*, 968 F.3d 264, 269-70 (3d Cir. 2020) (citation omitted). The City, through counsel, "made clear" its position that the Appellants had to keep certain information confidential. (J.A. at 57-58 ¶¶ 136-

---

[3] The Appellants abandon their due process, contract, and quasi-contract claims. They also do not contest the District Court's denial of their motion for leave to file a second amended complaint.

[4] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, as further detailed herein. We have appellate jurisdiction under 28 U.S.C. § 1291. "We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim[.]" *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (citation omitted). We look to see if, "tak[ing] as true" all factual allegations in the complaint and any "reasonable inferences that can be drawn from them," the complaint "state[s] a claim to relief that is plausible on its face." *Santiago v. Warminster Township*, 629 F.3d 121, 128 (3d Cir. 2010) (citation omitted). "We may affirm the district court on any ground supported by the record." *Joyce v. Maersk Line Ltd*, 876 F.3d 502, 512 n.11 (3d Cir. 2017).

[5] While this issue was not raised below, "standing is not subject to waiver," as we have an "independent obligation" to assure ourselves of our jurisdiction. *United States v. Hays*, 515 U.S. 737, 742 (1995) (citation omitted).

37.) Failure to obey was "at [their] own risk," a "stern warning" made real by the possibility of $300-a-day fines. (J.A. at 57-58 ¶¶ 136-37.) *See* Phila. Code § 1-109(1). For several weeks until the complaint was unsealed, the Appellants stayed silent out of a fear of punishment from the City, and they thus suffered a First Amendment injury. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159-61 (2014) (noting that plaintiffs who "ha[ve] been warned to stop" protected expression and "desire to continue" speaking, but stop to avoid punishment, have standing to sue (citation omitted)).

The Appellants' facial challenge, however, fails on the merits because it cannot meet the high bar of alleging that "no set of circumstances exist under which the [False Claims Ordinance] would be valid[,]" or, at least, that the ordinance is "overbroad because a substantial number of its applications are unconstitutional[.]" *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). The Appellants themselves concede that the ordinance "may … meet strict scrutiny" in certain circumstances.[6] (Opening Br. at 11, 24.) Moreover, it only requires confidentiality "to the fullest extent permitted under applicable law," limiting itself on its face to lawful applications. *Cf. Bldg. & Const. Trades Dep't v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) (reading executive order that required agencies to execute policies "[t]o the extent permitted by law" as self-limited to mandating lawful actions, given that the order "itself instruct[ed] … agenc[ies] to follow

---

[6] The District Court applied intermediate scrutiny to the First Amendment claim, but the Appellants argue that it should have used strict scrutiny instead. The City does not defend the Court's tiers-of-scrutiny analysis. We need not reach the issue because the claim fails under any standard.

the law"). The ordinance is therefore not "unconstitutional in all its applications," or even in a "substantial number" of them. *Marcavage*, 609 F.3d at 273.

The as-applied challenge, meanwhile, fails to establish municipal liability under *Monell* because the Appellants do not allege any unconstitutional "policy or custom[.]"[7] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). They point to emails from the City's attorneys demanding that they keep information confidential and stating that "the City has made clear … its position[.]" (J.A. at 57 ¶¶ 135-36.) The Appellants thus insist that the attorneys had announced an "official interpretation" of the False Claims Ordinance. (Reply Br. at 10-13.)

Even if that were so, it is not enough. An interpretation in one instance does not amount to a policy or custom. Those emails reflect the City's position on confidentiality in this specific case, not an official position on the interpretation of the ordinance generally. "A mere legal position, without anything more, is insufficient to constitute an official policy," *Teesdale v. City of Chicago*, 690 F.3d 829, 837 (7th Cir. 2012), and the Appellants do not point to any unconstitutional City conduct beyond the decision leading to this case.[8] *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (holding

---

[7] Because Pratt was sued in his official capacity, the suit is "treated as if" it was brought only against the City. *McGreevy v. Stroup*, 413 F.3d 359, 369 (3d Cir. 2005).

[8] The claim also fails under *Monell* because a law firm retained by the City to deal with the Appellants' demands does not have "final policymaking authority[,]" so outside counsel's actions cannot be imputed to the City. *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1062 (3d Cir. 1991); Phila. Code § 3-101 (The City Solicitor "shall exercise the powers and perform the duties vested in and imposed upon the [Law] [D]epartment[.]").

that "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*" absent evidence that the incident was caused by an existing policy).

## B.     Local Agency Law claim

Both sides argue, for different reasons, that we should dispose of the LAL claim on jurisdictional grounds rather than reaching its merits.  Both are wrong.

The City contends that the LAL claim is "wholly unrelated" to the only federal claim still in play: the First Amendment claim, which is based on separate events that occurred weeks after the denial of the proposed *qui tam* complaint.  (Answering Br. at 21-22.)  It says the District Court would thus have no basis for supplemental jurisdiction on remand.  But it is a "hornbook rule" that jurisdiction is assessed as of "the date of filing."  *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 299-300 (3d Cir. 2012).  The Appellants initially alleged federal due process claims based on the denial of their proposed complaint, and original jurisdiction over those claims existed pursuant to 28 U.S.C. § 1331.  The LAL claim challenging that same denial "derive[s] from a common nucleus of operative fact" as the due process claims, so supplemental jurisdiction under 28 U.S.C. § 1367(a) was plainly proper at the outset of the case.  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-66 (1997).

On the other side, the Appellants argue for the first time on reply that, once the District Court disposed of all the federal claims, it should have declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) and so should have dismissed the LAL claim on that basis rather than rejecting it on the merits.  That, the Appellants say,

8

would have allowed "Pennsylvania [c]ourts to properly resolve" the claim. (Reply Br. at 8-9.). But they forfeited their "challenge to the district court's discretionary exercise of supplemental jurisdiction over [their claim] because [they] failed to object in that court." *Powers v. United State*s, 783 F.3d 570, 576 (5th Cir. 2015). "Now that the district court has resolved [the] claim[] against them" on the merits, the Appellants "must live with the consequences of [their] strategic decision." *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 366 (7th Cir. 1998), *on remand from Int'l Coll. of Surgeons*, 522 U.S. 156 (1997).

On the merits, the parties dispute whether the Appellants' interest in the potential proceeds of their *qui tam* complaint was protected by the LAL, such that the City Solicitor's denial of their complaint was an "adjudication" from which the Appellants can seek relief.[9] The City claims that Pennsylvania courts "uniformly h[o]ld that, to be adjudicatory, a decision must impact a property interest protected by due process." (Answering Br. at 19.) Relying on dictum in *Pennsylvania Game Commission v. Marich*, 666 A.2d 253, 257 (Pa. 1995), the Appellants respond that the LAL also applies to

---

[9] Under the LAL, an appellant must be "aggrieved" by an "adjudication" of a "local agency" in which he has a "direct interest." 2 Pa. Cons. Stat. § 752. An adjudication is "any final … decision … by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding[.]" *Id.* § 101. The parties agree "that Dankanich and Marrandino are aggrieved; that the City and its Solicitor are local agencies subject to the Local Agency Law; and that the February 8, 2019 letter was a final decision." (Answering Br. at 19.) The question, then, is whether the determination not to authorize a *qui tam* action was an "adjudication."

9

interests such as privileges, which are covered even though they do not receive "the full panoply of due process protections[.]" (Opening Br. at 13; Reply Br. at 4-5.)

Even under the Appellants' broader reading of the statute, however, any contingent interest they may have had in the potential proceeds of a *qui tam* lawsuit is not covered by the LAL. That law does not protect "amorphous interests[,]" "theoretical" possibilities, or "remote, future, indirect or speculative rights." *Guthrie v. Borough of Wilkinsburg*, 478 A.2d 1279, 1282-83 (Pa. 1984). The Appellants' right to receive an undetermined share of the proceeds in the event a lawsuit is permitted and succeeds is far too remote and speculative to constitute a protected interest.[10] *See* Phila. Code § 19-3603(2)(b), (4), (6)-(8); *Bruno v. Zoning Bd. of Adjustment*, 664 A.2d 1077, 1080 (Pa. Commw. Ct. 1995) (permit that "may be revoked at any time" "confers no vested right or privilege"); *cf. United States ex rel. Bayarsky v. Brooks*, 210 F.2d 257, 258 (3d Cir. 1954) (*qui tam* plaintiff who has already filed a suit lacks a protected interest in his claim (citing *U.S. ex rel. Rodriguez v. Wkly. Publ'ns*, 144 F.2d 186, 188 (2d Cir. 1944)).

Finally, quoting *Wortman v. Phila. Comm'n on Hum. Rels.*, 591 A.2d 331, 333 (Pa. Commw. Ct. 1991), the Appellants argue that the City Solicitor's denial is reviewable because it left them with "no other forum [in which] to assert their 'rights,

---

[10] The Appellants also argue that, because an "adjudication" is a decision that affects the interests "of any … part[y]," they can seek review by piggybacking off the City's "[p]roperty [i]nterest in the [proposed] claim[.]" (Reply Br. at 7-8.) That is yet far afield: even assuming the City can be a "party" to a decision of its own agency in a non-adversarial proceeding – a proposition for which the Appellants cite no authority – it is no "adjudication" for the City itself to decide not to file suit.

privileges, or immunities.'" (Opening Br. at 13, 17-19.) That argument reads *Wortman* too narrowly and ignores the next sentence of the opinion, which reaffirms the principle that an agency decision is a reviewable adjudication only if it "impacts on a person's personal or property rights, privileges, immunities, duties, liabilities, or obligations." *Wortman*, 591 A.2d at 333. Ultimately, the Appellants' inability to allege a protected interest dooms their LAL claim.

## III.  CONCLUSION

The District Court correctly dismissed the First Amendment and LAL claims. We will therefore affirm.