**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3290
_____

CYNTHIA STEPIEN, on behalf of herself and her minor child; STAMATIA DIMATOS
SCHRECK on behalf of herself and her three minor children; RYAN CODY, on behalf
of himself and his minor child J.C.; KELLY FORD, on behalf of herself and her minor
child A.F.; SIMONA CHINDEA, on behalf of herself and her two minor children; GABE
MCMAHON; M. F.; M. K. N.; K. B.; B.W.; L. R.; J. V. P.; V. P.; D. M.; B. M.; A. M.;
DANIELLE ESCAYG; AND ALL OTHERS SIMILARLY SITUATED,
Appellants

v.

GOVERNOR OF NEW JERSEY; NEW JERSEY COMMISSIONER OF EDUCATION;
NEW JERSEY COMMISSIONER OF HEALTH

_____

On Appeal from the United States District Court for the
District of New Jersey
(District Court No. 2:21-cv-13271)
District Court Judge: Honorable Kevin McNulty

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 16, 2022

(Filed: April 6, 2023)

Before: KRAUSE, BIBAS, and RENDELL, *Circuit Judges*.
_____

OPINION*
_____

**RENDELL**, *Circuit Judge*.

When the COVID-19 pandemic struck, New Jersey Governor Philip Murphy mandated masks in New Jersey schools. Believing that was unconstitutional, Plaintiffs filed suit against Governor Murphy, Education Commissioner Allen-McMillan, and Health Commissioner Persichilli ("Defendants") to enjoin the mandate's enforcement. The District Court denied Plaintiffs' request for an injunction and dismissed the lawsuit. After that, and while this appeal was pending, the Governor withdrew the mandate. Defendants say that makes the case moot and deprives the federal courts of jurisdiction. We agree. Federal courts may only decide "cases" and "controversies," and that requires a live dispute between adverse parties. Because this case is not justiciable, we will affirm the order of the District Court.

I.[1]

In March 2020, Governor Murphy issued Executive Order ("EO") 103, through which he declared a state of emergency under the Emergency Health Powers Act, N.J. Stat. Ann. § 26:13-1. He used his authority under the Act to close all New Jersey elementary and secondary schools. By August 2020, the public health situation improved enough to reopen them, yet the Governor issued EO 175, which imposed health and safety protocols

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We write primarily for the parties and so we recite only the facts essential to our decision.

that included "[m]andatory use of face coverings by staff, students, and visitors" at schools. N.J. Exec. Order No. 175 ¶ 2b (Aug. 13, 2020).

Plaintiffs are New Jersey public school students, their parents, and a special education teacher. While the mandate was in place, they sued Defendants in the District Court, alleging that the mandate violated their rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. They sought to enjoin the Governor from enforcing the mandate and to compel Defendants to issue an order forbidding the individual school districts from creating their own mandates. They also sought a declaration that school mask mandates violate students' constitutional rights and thus the executive orders imposing them were "void as illegal[.]" App. 64. The District Court denied Plaintiffs' request for a preliminary injunction as unlikely to succeed on the merits. Plaintiffs timely filed this appeal.

II.

The District Court had federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. Ordinarily, our jurisdiction to review the denial of preliminary injunctive relief is proper under 28 U.S.C. § 1292(a)(1), but as we explain below, that jurisdiction does not exist here because the case is moot.

Article III of the Constitution limits a federal court's jurisdiction to "cases" and "controversies," which exist only where actions "present live disputes" such that "both sides have a personal stake." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020). Cases on appeal become moot "if events have taken place during the pendency of the appeal that make it impossible for the court to grant any effectual relief whatsoever."

*Cty. of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021) (internal quotation marks omitted). But we hesitate to declare a case moot "where the defendant claims the matter has become moot owing to his voluntary cessation of the challenged action." *Clark v. Governor of N.J.*, 53 F. 4th 769, 775 (3d Cir. 2022) (citing *Hartnett*, 963 F.3d at 306–07). And we recognize an exception to the mootness doctrine where a defendant's actions are "capable of repetition yet evading review." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (cleaned up). The latter "applies only in exceptional situations where (1) the challenged action is in its duration too short to be fully litigated" before it stops or expires, "and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (cleaned up).

### III.

On March 4, 2022, after Plaintiffs filed this appeal, Governor Murphy issued EO 292, ending the mask mandate. Around the same time, the Department of Health issued "guidance" to districts about when and how to impose new mask mandates, but it explained that "individual school districts and school boards" could "make the determination as to whether universal masking is appropriate for their schools." Appellant's Supp. App. 80. Defendants have argued that the mandate's end made this case moot, and no exception to mootness applied, while Plaintiffs have countered that the case is still live, or the "capable of repetition yet evading review" exception applies.

We recently faced a similar challenge to expired pandemic restrictions in *Clark v. Governor of New Jersey*, 53 F.4th at 771. There, two church congregations and their pastors mounted a First Amendment challenge to an executive order limiting in-person, indoor

religious worship gatherings. *Id*. at 772. Six days after they sued, the Governor rescinded the challenged order, and he gradually ended all restrictions over the next several months. *Id*. at 772–73. We found the eliminated restrictions left "no 'effectual relief whatsoever'" for us to grant, rendering the case "facially moot." *Id*. at 776. And for three instructive reasons, we rejected the plaintiffs' argument that the Governor's voluntary cessation of the challenged conduct militated against mootness: (1) the public health situation had changed from the beginning of the pandemic; (2) the Governor did not reimpose restrictions during the waves of COVID variants that followed; (3) and it was not reasonably likely that future restrictions would resemble the original ones enough to constitute the same legal controversy. *Id*. at 777–81. All of that made it "absolutely clear" that the State's "allegedly wrongful behavior" would not recur, so we ruled that the case was moot. *Id*. at 775 (quotation omitted).

Here, given the similarity of the issues, we asked the parties to file supplemental briefs addressing whether this case is moot based on our ruling in *Clark*. The State urges that *Clark* requires us to find that it is and that neither voluntary cessation nor the capable of repetition yet evading review exception to mootness compel a different result.[2] But Plaintiffs urge that the case is still live, notwithstanding *Clark.* They point out that the

---

[2] In the supplemental briefing, Defendants argue Plaintiffs waived any reliance on voluntary cessation. Under ordinary circumstances, we would agree, but we asked the parties to brief mootness generally, and that includes all scenarios that militate against mootness. But as we explain below, it makes no difference because the facts before us show that voluntary cessation of the challenged conduct does not rescue the case from mootness.

complaint in *Clark* focused only on the terminated order, yet Plaintiffs here also seek an order requiring school districts to cease issuing any mandates on their own.

The challenged mandate here "was a product of the pandemic's early stages" and Plaintiffs grounded their objections "in the mandate's particulars." *Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) (en banc). That requires us to measure the mandate and Plaintiffs' objections to it against the backdrop of the grave public health conditions that made the mandate necessary. The upshot is Plaintiffs can succeed only if the resurfacing controversy has the same fit between the existing conditions and "the mandate's particulars." *Id*. But as we explained in *Clark*, that fit is no longer the same: vaccines, therapeutics, and other mitigation measures have changed the COVID landscape for the better. 53 F.4th at 778. And Governor Murphy's decision not to dial up new mask mandates even as Omicron surged suggests those mandates will not recur unless COVID takes a dramatic turn for the worse. *Id.* at 779. Yet, even if he did, that would create an altogether different fit between any *new* mask mandate and the reality on the ground, birthing a different controversy between the parties.[3]

Plaintiffs seek refuge in the concept of voluntary cessation and the "capable of repetition yet evading review" exception to mootness. They also try to distinguish *Clark* based

---

[3] Moreover, Plaintiffs misplace their reliance on *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (per curiam). There, in an opinion issued on November 25, 2020, the Court split on the need for relief. The majority viewed the situation as involving a "constant threat" that gathering restrictions would be reimposed, *id*. at 68, while the Chief Justice and the dissenters believed it was unwise to issue "[a]n order telling the Governor not to do what he's not doing," *id*. at 75 (Roberts, C.J., dissenting). This case presents the latter situation.

on their request for an order from Defendants. None of these arguments pass muster. We start with voluntary cessation. We have explained that "in voluntary-cessation cases, defendants' burden of showing mootness is heavy." *Hartnett*, 963 F.3d at 307 (internal citation omitted). To carry this burden, the defendant must show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (quotation omitted). The same reasons that convinced us the case was moot in *Clark* lead us to reach that conclusion here. Public health conditions have changed dramatically since the dawn of the pandemic. Infection rates are down, vaccination rates are up, and officials have more arrows in their quiver to mitigate and treat COVID-19. Those increased options have borne fruit that undermines Plaintiffs' argument: despite a surge in infection rates during the Omicron wave, the Governor did not reimpose masking restrictions. The record shows that the Governor withdrew and refused to reimpose the mandate because of the changed health conditions, not this lawsuit. Beyond all that, we disagree that this case presents anything like *Roman Catholic Diocese* and the constantly shifting restrictions that troubled the Supreme Court there.[4] Thus, we conclude that the termination of the mandate was not the

---

[4] In *Roman Catholic Diocese*, the state imposed a complex regime of restrictions on gatherings that differed by region, and the state rapidly relaxed and tightened them in response to changing health conditions. 141 S. Ct. at 68. Those factors were enough to convince the Supreme Court that dropping the restrictions did not moot the case because history showed they could be reimposed at any time and in an unpredictable way. *See id.* at 68–69. But that was a different situation than the one in this case: the restrictions here were uniform, Defendants have not reimposed the school mask requirement once since rescinding it, and even a major uptick in cases during the Omicron wave did not persuade Defendants to act otherwise.

kind that triggers our skepticism of a party's claim of mootness due to voluntary cessation of the allegedly wrongful behavior. *See Hartnett*, 963 F.3d at 306–07.

Plaintiffs fare no better under the exception to mootness for acts capable of repetition yet evading review. To invoke the exception, Plaintiffs must show "there is a reasonable expectation that the same complaining party will be subject to the same action again," *Hamilton*, 862 F.3d at 335 (quotation omitted), and "[t]he action that must be repeatable is the precise controversy between the parties." *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 517 (D.C. Cir. 2019) (internal quotation marks omitted). Our reasoning in *Clark* does double duty here because, at bottom, this exception mirrors voluntary cessation by testing whether there is a reasonable expectation the challenged behavior will recur. *See, e.g.*, *Brach v. Newsom*, 38 F.4th 6, 15 (9th Cir. 2022) (en banc) ("Our rationale for rejecting [the capable of repetition] exception mirrors much of our analysis regarding . . . voluntary cessation[.]"); *Resurrection Sch.*, 35 F.4th at 530 (finding that the capable of repetition exception "inapposite for largely the same reasons" that voluntary cessation did not counsel against a finding of mootness). And as we have explained, there is no such expectation here.

Finally, we conclude that Plaintiffs' remaining request for an order compelling Defendants to order the districts not to issue their own mandates is also nonjusticiable. For one thing, Plaintiffs lack Article III standing. "To establish Article III standing, a plaintiff must demonstrate (1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir.

2016) (internal quotation marks omitted). But Plaintiffs are hard-pressed to show an injury stemming from district-specific mandates that districts haven't even drawn up, let alone put in place. Instead, they point to "conjectural or hypothetical" future mandates, not ones that are "actual or imminent." *Id.* (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)). And as we have already explained, the drastic improvement in COVID mitigation measures since the pandemic's early days has led many New Jersey school districts to hold off on new mandates—even as Omicron and other variants surged. That makes any future mandates unlikely and leaves Plaintiffs to "rely on a chain of contingencies or mere speculation" that can't support standing. Plaintiffs don't show that future mandates are "imminent," so they fail to state a cognizable injury-in-fact sufficient for Article III standing. *Id.* (quotation omitted).

Yet even if Plaintiffs could show an injury-in-fact, they would still fail to satisfy the causation element of Article III standing because it is not clear they could trace that injury "to the challenged action of the [D]efendant[s]" rather than "the independent action of some third party [that is] not before the court." *Id.* (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137–38 (3d Cir. 2009)). Plaintiffs named only the Governor, the Commissioner of Education, and the Commissioner of Health as Defendants. But under New Jersey law, school boards appear to have independent power to enact mask mandates given their broad authority over "the government and management" of in-district schools. N.J. Stat. Ann. § 18A:11-1(c). It follows that any injury to Plaintiffs from district-specific mandates would be fairly traceable not to Defendants' conduct, but to "unfettered choices made by independent actors not before the court," namely the school districts. *R.K. v. Lee*,

9

53 F.4th 995, 999 (6th Cir. 2022) (internal citation omitted). And as we recognized in *Clark*, the Defendants' mere "supervisory authority" would not make this case justiciable. *See Clark*, 53 F.4th at 780–81.

Relatedly, Plaintiffs' request for injunctive and declaratory relief to remedy future district-imposed mandates is not ripe for our review. Ripeness examines whether an action is premature and requires courts to abstain from deciding a dispute until it becomes "sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Sherwin-Williams Co. v. Cnty. of Delaware, Pa.*, 968 F.3d 264, 272 (3d Cir. 2020) (internal quotation marks omitted). But "[a] dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id*. (quoting *Wyatt, V.I., Inc. v. Gov't of V.I.*, 385 F.3d 801, 806 (3d Cir. 2004)) (cleaned up). And even though parties "seeking declaratory relief need not wait until the harm has actually occurred to bring the action[,]" they still must show that the future event has a "real and substantial" probability of happening and that it is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (quotation marks omitted).

Simply put, Plaintiffs' claims focused on future district-imposed mandates are not ripe for largely the same reasons they fail to show an injury-in-fact: the claims require us to speculate about whether the districts will ever impose mask mandates and what those mandates would look like. *See id*. Yet individual New Jersey school districts may *never* impose their own mask mandates in the future. And that seems probable considering that the vast majority of districts did not re-implement such mandates as COVID variants

10

surged. The upshot is Plaintiffs offer nothing but uncertainty about whether any New Jersey school district will impose a mask mandate in the future. Until the threat of such a mandate becomes "sufficiently concrete," Plaintiffs' constitutional challenge is premature and thus "unfit for judicial resolution." *Id.* (quotation marks omitted).

Because Plaintiffs cannot establish the existence of a case or controversy that arises from future district-imposed mask mandates, their related requests for injunctive and declaratory relief are nonjusticiable.

## IV.

Plaintiffs seek "an insurance policy that" there will "never ever [be another school mask mandate], even in the face of yet another unexpected emergency or contingency." *Brach*, 38 F.4th at 9. But the federal courts do not insure against such a possibility. Plaintiffs' case is moot and there is no impending threat of harm or recurrence of harm. For those reasons, we will affirm the order of the District Court.